[No. 1329.    Decided July 11, 1894.]

NELS PETERSON, *Respondent*, v. JAMES H. WOOLERY, *Sheriff*, et al., *Appellants*.

ATTACHMENT — ACTION OF CLAIM AND DELIVERY — EVIDENCE — CONDITIONAL SALE.

In an action of claim and delivery, where the defense gives no evidence showing a greater value than that stated by the claimant in his affidavit, there is no issue as to value to be submitted to the jury, but the claimant is bound by the amount set forth in his affidavit.

In such an action it is unnecessary to show that the attaching creditor was a *bona fide* one until that fact has been attacked by the adverse party.

The delivery of shingle bolts to a shingle manufacturer under a contract providing that title to the bolts was not to pass, and that payment therefor was to be at a certain rate for shingles manufactured therefrom, does not constitute such a conditional sale of the shingle bolts as to require a record thereof to be made under the provisions of Laws 1893, p. 253, in order to prevent the sale being treated absolute as to creditors.   (HOYT and SCOTT, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Allen & Powell,* for appellants.

*William Martin,* for respondent.

The opinion of the court was delivered by

STILES, J.— The act of March 10, 1893 (Laws, p. 253), provides that a conditional sale of personal property, fol-

lowed by the possession· of the vendee, shall be absolute as to creditors unless the vendor and vendee join in a memorandum stating the terms and conditions of the sale, to be filed in the auditor's office.

The sheriff of King county, having in his hands a writ of attachment issued at the suit of a creditor of one Mc-Master, levied it upon certain shingle bolts, which the respondent claimed as his property. Respondent filed an affidavit alleging the value of the bolts to be $500, and took them into his own possession under a proper bond.

At the trial no evidence was given upon either side as to the value, and the court submitted the question of value to the jury. This was unnecessary. The claimant must state the value in his affidavit, which will bind him; and unless the defense gives some evidence showing a greater value there is no issue to submit to the jury. Neither was it necessary that the defense show that the attaching creditor was a creditor in good faith until that fact was in some way attacked by the other side. The other allegations of error can be better disposed of upon a consideration of the contract between respondent and McMaster, the essential parts of which were as follows:

"The said party of the second part [respondent] . . . agrees to deliver to the party of the first part, at the shingle mill . . . in the city of Seattle, 2,000 cord of shingle bolts . . . And the said party of the second part agrees to deliver said shingle bolts on rafts or floats at the rate of 100 cord a week, each raft to contain from 100 to 150 cords of shingle bolts. The title to said shingle bolts is to remain in the said party of the second part until paid for.

"The said party of the first part [McMaster] . . . . will pay to the said party of the second part, in the manner and in the sums and at the times as herein provided for the delivery of said shingle bolts the prices following, to wit: $52\frac{1}{2}$ cents per M for each and every M shingles manufactured, said shingles to be made to measure 6

shingles to 2 inches at the thick end; and the sum of
62½ cents per M for each and every M shingles manu-
factured, said shingles to be made to measure 5 shingles
to 2 inches at the thick end; and each and every M
shingles manufactured of what is known as rejected
shingles the sum of 52½ and 62½ cents per M, respectively.

"Said party of the first part agrees to keep a correct
account of all shingles manufactured at his mill of the
shingle bolts delivered by the said party of the second
part; and whenever a raft load of shingle bolts is all man-
ufactured into shingles, then the said party of the first part
agrees to pay in full (at the rate specified in this contract)
for all the shingles manufactured out of said raft load of
shingle bolts.

"And it is further agreed by and between the party of
the first part and the party of the second part that the
standard price of shingles 6 to 2 inches is now at the date
of this contract $1.35 per M, and that the price of 52½
cents per M mentioned in this contract is based on this
price; and the standard price of shingles 5 to 2 inches is
now at the date of this contract $1.60 per M, and the
price of 62½ cents per M as mentioned in this contract is
based on this price.    And if at any time during the exist-
ence of this contract the prices of shingles shall advance,
then the said party of the first part shall at once notify the
said party of the second part of that fact, and the party of the
second part shall according to this contract be entitled to
one-half of such advance, that is, if shingles advance 5, 10
or 40 cents per M over and above the standard price men-
tioned in this contract, then the said party of the first part
agrees to pay to said party of the second part one-half of
such advance in addition to the 52½ and 62½ cents per M
shingles, as specified in this contract.    But at no time
shall the price paid for shingle bolts be any less than 52½
and 62½ cents per M for shingles manufactured out of
bolts delivered by the said second party."

About 200 cords of bolts had been floated conveniently
near the shingle mill, and from these McMaster had made
about 175,000 shingles; the remainder were those seized un-
der the attachment.  Appellants' position is that the contract

was an agreement for the conditional sale of shingle bolts which became effective as a sale upon a condition subsequent (the payment of the price per thousand shingles) as soon as the bolts were delivered at the mill, that is, as the facts showed, moored on floats near the mill and surrendered to the will of McMaster so that he could proceed with the manufacture of shingles from them.

If this construction of the contract is a correct one it was for the jury to determine the facts as to delivery, and their verdict might have been for appellants, inasmuch as neither the contract nor any memorandum of it was recorded. But if the contract itself did not provide for a conditional sale of shingle bolts, the fact of delivery to McMaster was immaterial, as the case would turn upon the construction of the instrument given by the court, leaving nothing for the jury to pass upon.

It seems to us that this contract is not one for the sale of shingle bolts in any event, although there is more or less mention of bolts in it. The respondent agrees to deliver bolts at the rate of 100 cords a week, and although there is no express provision that McMaster shall convert them into shingles, the clear implication must be to that effect. Respondent nowhere undertakes to sell bolts, and McMaster is not bound to accept and pay for bolts. The one agrees to furnish the materials, while the other undertakes to manufacture them into shingles. If these bolts were to be considered fully delivered, what would be Peterson's measure of damage in case McMaster refused to convert them into shingles? Certainly not the value of the bolts by the cord, as upon a sale; for the contract does not provide for the ascertainment of the price in that way, and it would be impossible to say how many shingles could have been produced from the bolts. On the other hand, McMaster could not compel Peterson to accept the cord value of the bolts in payment of his obligation. In

fact, until shingles had been produced the law would not, as between the parties to the contract, enforce it as a sale of bolts against either; and if not against the parties to it, as between themselves, it certainly should not do so at the instance of mere creditors of one or the other.

Rightly considered, McMaster was the bailee of the bolts for Peterson until they were made into shingles, when the sale provisions of the contract took effect, and no title, conditional or otherwise, passed until then. The agreement was to sell shingle bolts in the form of shingles, when they should be reduced to that form by the labor of McMaster, the price to be per thousand of shingles, but the absolute title of the shingles, even, not to pass until they were paid for. Possession of the materials given for the purpose of manufacture in no wise changed the nature of the transaction from that provided for in the contract; indeed the contract must have implied that such a possession be taken. Respondent could safely intrust such a possession to McMaster without fear that any creditor of the latter would be able to interfere, because until shingles were made there was nothing in existence which was intended to be the subject of a sale.

This construction of the contract makes the judgment necessarily a correct one, and it is, therefore, affirmed.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*). — I am unable to agree with the majority of the court. In my opinion it was a conditional sale of the bolts by the respondent, and came directly within the provisions of the statute, so that the conditions of the contract could have no effect as against creditors of the one to whom they were sold, unless the same had been recorded as required by law. Respondent was not dealing in shingles, and it was not within the contemplation of the parties to the contract that it was to be a sale of shingles. It was intended that it should be a sale of the shingle bolts,

and there was simply a reservation of the title until such time as the value should be determined under the provisions of the contract.    If the statute can be avoided by putting the conditions in any particular form, the evil which it was intended to meet will exist the same as before. The object of the statute was to prevent one placing another in absolute and open possession of personal property and at the same time retaining such an interest therein by virtue of some condition in the contract of sale that creditors who might act upon the fact of such possession could be deprived of the proceeds of such property.    I think the judgment should be reversed.

SCOTT, J., concurs.